# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF TEXAS
### AUSTIN DIVISION

| | |
|---|---|
| YETI Coolers, LLC, | Case No. |
| Plaintiff, | **COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF FOR:** |
| v. | (1) **TRADE DRESS INFRINGEMENT IN VIOLATION OF 15 U.S.C. § 1125(a);** |
| Blackbird Products Group, LLC, d/b/a Mammoth Coolers, | (2) **UNFAIR COMPETITION AND FALSE DESIGNATION OF ORIGIN IN VIOLATION OF 15 U.S.C. § 1125(a);** |
| Defendant. | (3) **TRADE DRESS DILUTION IN VIOLATION OF 15 U.S.C. § 1125(c);** |
| | (4) **TRADE DRESS DILUTION IN VIOLATION OF TEX. BUS. & COM. CODE § 16.103;** |
| | (5) **COMMON LAW TRADE DRESS INFRINGEMENT;** |
| | (6) **COMMON LAW UNFAIR COMPETITION;** |
| | (7) **COMMON LAW MISAPPROPRIATION; AND** |
| | (8) **UNJUST ENRICHMENT.** |
| | **Jury Trial Demanded** |

## COMPLAINT

Plaintiff, YETI Coolers, LLC ("YETI"), for its complaint against Blackbird Products Group, LLC d/b/a Mammoth Coolers ("Mammoth Coolers"), based on knowledge and on information and belief as appropriate, alleges as follows:

**The Parties**

1.      YETI is a company organized and existing under the laws of the State of Delaware with a principal place of business at 5301 Southwest Parkway, Suite 200, Austin, TX 78735.

2.      Upon information and belief, Blackbird Products Group, LLC is a corporation organized under the laws of the State of Missouri with a principal place of business at 8500 River Park Drive, Pillar 237B, Parkville, Missouri, 64152 that does business under the names Mammoth, Mammoth Cooler, and/or Mammoth Coolers, including through the website http://mammothcooler.com/.

**Jurisdiction and Venue**

3.      This is an action for trade dress infringement, unfair competition and false designation of origin, trade dress dilution, misappropriation, and unjust enrichment.  This action arises under the Trademark Act of 1946, 15 U.S.C. § 1051, *et seq*. ("the Lanham Act"), federal common law, the Texas Business & Commerce Code, and state common law, including the law of Texas.

4.      This Court has subject matter jurisdiction over this action pursuant to at least 15 U.S.C. § 1121(a) and 28 U.S.C. §§ 1331, 1338(a) & (b), and 1367(a).

5.      This Court has personal jurisdiction over Mammoth Coolers because, *inter alia*, Mammoth Coolers is doing business in the State of Texas, including in this District.  For example, and as discussed in more detail below, (i) Mammoth Coolers' principal website (http://mammothcooler.com/) reaches into Texas, including this District, on which Mammoth Coolers has advertised, promoted, offered for sale, sold, and distributed, and continues to advertise, promote, offer for sale, sell, and distribute infringing products to customers and potential customers, (ii) Mammoth Coolers' tortious acts giving rise to this lawsuit are occurring in the State of Texas, including in this District, and (iii) Mammoth Coolers' customers and/or potential customers reside in the State of Texas, including in this District.

6.      Venue is proper in this District pursuant to at least 28 U.S.C. §§ 1391(b) and (c).

2

**General Allegations – YETI's Trade Dress**

7.      For almost ten years, YETI has continuously engaged in the development, manufacture, and sale of premium, heavy-duty coolers.  YETI created unique, distinctive, and non-functional designs to use with YETI's coolers.  YETI has extensively and continuously promoted and used these designs for years in the United States.  Through that extensive and continuous use, YETI's designs have become a well-known indicator of the origin and quality of YETI's cooler products.  YETI's designs also have acquired substantial secondary meaning in the marketplace and have become famous.  As discussed in more detail below, YETI owns trade dress rights relating to the source-identifying features of its cooler designs.

8.      In about 2008, YETI introduced its "Roadie®" and "Tundra®" coolers into the marketplace.[1]

9.      As a result of YETI's considerable investments and efforts, the Roadie® and Tundra® coolers are designed and built to provide extreme insulating capabilities and exceptional durability.  YETI has invested substantial resources in the design, development, manufacture, and marketing of its coolers.

10.      YETI has sold more than 400,000 Roadie® coolers and more than 1,000,000 Tundra® coolers throughout the United States, including sales to customers in the State of Texas.  YETI has expended significant resources advertising and marketing its Roadie® and Tundra® coolers.  The design and features of YETI's Roadie® and Tundra® coolers have received widespread and unsolicited public attention.  For example, the Roadie® and Tundra® coolers have been featured in numerous newspaper, magazine, and Internet articles directed to outdoor enthusiasts.

11.      The designs of the Roadie® and Tundra® coolers have distinctive and non-functional features that identify to consumers that the origin of the coolers is YETI.  As a result of at least YETI's continuous and exclusive use of the designs of the Roadie® and Tundra®

---

[1] YETI owns Trademark Registration No. 4,083,932 for "ROADIE" for portable coolers and Trademark Registration No. 4,083,930 for "TUNDRA" for portable coolers.

coolers, YETI's marketing, advertising, and sales of the coolers, and the highly valuable goodwill and substantial secondary meaning acquired as a result, YETI owns trade dress rights in the designs and appearances of the Roadie® and Tundra® coolers, which consumers have come to uniquely associate with YETI.

12.      Illustrations 1 and 2 below show exemplary YETI Roadie® and Tundra® coolers.

**Illustration 1:  Exemplary Image of a YETI Roadie® Cooler.**





**Illustration 2:  Exemplary Images of a YETI Tundra® 45 Cooler and a YETI Tundra® 65 Cooler.**

**YETI Tundra® 45 Cooler**

**YETI Tundra® 65 Cooler**

13.    YETI's trade dress rights in the designs and appearances of the Roadie® and Tundra® coolers include, but are not limited to, the visual flow of the Tundra® and Roadie® coolers, the curves and lines in the Tundra® and Roadie® coolers, the design, style, and

appearance of these curves and lines in the Tundra® and Roadie® coolers, the visual connection and relationship between one or more of the curves and lines in the Tundra® and Roadie® coolers, and the style, design, and appearance of one or more design aspects of the Tundra® and Roadie® coolers, including but not limited to the design and appearance of the style line on the front of the cooler; the design and appearance of the style line on the back of the cooler; the design and appearance of the style line on each side of the cooler; the design and appearance of the "duck-bill" tapered front corners of the cooler; the design and appearance of the inverted style line above the name plate and below the lid; the design and appearance of the ledge around the perimeter of the cooler; the design and appearance of the rope handles, the design and appearance of the front, side and rear design of the feet of the cooler; the placement, design and appearance of the slots on the side, front and rear of the cooler; the design and appearance of the latches; the design and appearance of the name plate and name plate lettering; the placement, design, and appearance of the name plate on the front between the two front style lines; and the color contrast, color combinations, and shapes of features of the cooler, whether these elements are alone or in any combination with each other, including the overall look and appearance of the Roadie® and Tundra® coolers.

14.     For many years, YETI has also engaged in the development, manufacture, and sale of premium, heavy-duty insulated drinkware.  YETI created unique, distinctive, and non-functional designs to use with YETI's insulated drinkware.   YETI has extensively and continuously promoted and used these designs in the United States and in Texas.  Through that extensive and continuous promotion and use, *inter alia*, the YETI designs have become well-known indicators of the origin and quality of YETI insulated drinkware.  The YETI designs also have acquired substantial secondary meaning in the marketplace and have become famous.  As discussed in more detail below, YETI owns trade dress rights relating to the source identifying features of its insulated drinkware designs.

15.     Specifically, YETI sells insulated drinkware products, the "YETI® 30 oz. Rambler™ Tumbler" and the "YETI® 20 oz. Rambler™ Tumbler," hereinafter referred to as "the

Rambler™ Tumblers." As a result of YETI's considerable investments and efforts, the Rambler™ Tumblers are designed and built to provide extreme insulating capabilities and exceptional durability.   YETI has invested substantially in the design, development, manufacture, and marketing of the Rambler™ Tumblers.

16.     YETI has enjoyed significant sales of the Rambler™ Tumblers throughout the United States, including sales to customers in the state of Texas.   YETI has expended significant resources advertising and marketing the Rambler™ Tumblers.

17.     The Rambler™ Tumblers designs also have distinctive and non-functional features that identify to consumers that the origin of the Rambler™ Tumblers is YETI.   As a result of YETI's continuous and exclusive use of the designs, YETI's marketing, advertising and sales of the designs, and the highly valuable goodwill and substantial secondary meaning acquired as a result, YETI owns trade dress rights in the Rambler™ Tumblers designs.

18.     Illustration 3 below shows an exemplary image of the YETI® 30 oz. Rambler™ Tumbler sold by YETI.

| Illustration 3:  Exemplary Image of a YETI 30 oz. Rambler™ Tumbler |
| --- |
|  |

19.     YETI's trade dress rights in the design and appearance of the YETI 30 oz. Rambler™ Tumbler, include, but are not limited to, the visual flow of the YETI 30 oz. Rambler™ Tumbler, the curves, tapers, and lines in the YETI 30 oz. Rambler™ Tumbler, the design, style, and appearance of these curves, tapers, and lines in the YETI 30 oz. Rambler™ Tumbler, the visual connection and relationship between one or more of the curves, tapers, and lines in the YETI 30 oz. Rambler™ Tumbler, and the style, design, and appearance of one or more design aspects of the YETI 30 oz. Rambler™ Tumbler, including but not limited to the design and appearance of the walls of the tumbler; the design and appearance of the rim of the tumbler; the design, appearance, and placement of the taper in the side wall of the tumbler; the design, appearance, and placement of the upper portion, mid portion, and bottom portion of the side wall of the tumbler, alone and in combination; the design, appearance, and placement of the style line around the base of the tumbler;  the design, appearance, and placement of the tab on the lid of the tumbler; the design, appearance, and placement of the drinking opening on the lid of the tumbler; the design, appearance, and placement of the top plane of the lid of the tumbler; the design, appearance, and placement of the side walls of the lid of the tumbler; and the color contrast and color combinations of the tumbler and the tumbler lid, whether these elements are alone or in any combination with each other, including the overall look and appearance of the tumbler and tumbler lid.

20.     Illustration 4 below shows an exemplary image of the YETI® 20 oz. Rambler™ Tumbler sold by YETI.

| Illustration 4:  Exemplary Image of a YETI 20 oz. Rambler™ Tumbler |
|---|
|  |

21.     YETI's trade dress rights in the design and appearance of the YETI 20 oz. Rambler™ Tumbler, include, but are not limited to, the visual flow of the YETI 20 oz. Rambler™ Tumbler, the curves, tapers, and lines in the YETI 20 oz. Rambler™ Tumbler, the design, style and appearance of these curves, tapers and lines in the YETI 20 oz. Rambler™ Tumbler, the visual connection and relationship between one or more of the curves, tapers and lines in the YETI 20 oz. Rambler™ Tumbler, and the style, design and appearance of one or more design aspects of the YETI 20 oz. Rambler™ Tumbler, including but not limited to the design and appearance of the walls of the tumbler; the design and appearance of the rim of the tumbler; the design, appearance, and placement of the taper in the side wall of the tumbler; the design, appearance, and placement of the style line around the base of the tumbler; the design, appearance, and placement of the tab on the lid of the tumbler; the design, appearance, and placement of the drinking opening on the lid of the tumbler; the design, appearance, and placement of the top plane of the lid of the tumbler; the design, appearance, and placement of the side walls of the lid of the tumbler; and the color contrast and color combinations of the tumbler and the tumbler lid, whether these elements are alone or in any combination with each other, including the overall look and appearance of the tumbler and tumbler lid.

22.     As a result of YETI's exclusive, continuous and substantial use, advertising, and sales of cooler and insulated drinkware products bearing YETI's trade dress, and the publicity and attention that has been paid to YETI's trade dress, YETI's trade dress has become famous and has acquired valuable goodwill and substantial secondary meaning in the marketplace, as consumers have come to uniquely associate them as source identifiers of YETI.

**General Allegations – Mammoth Coolers' Unlawful Activities**

23.     Mammoth Coolers has purposefully advertised, promoted, offered for sale, sold, and distributed, and continues to advertise, promote, offer for sale, sell, and distribute coolers and tumblers that infringe on YETI's rights, including the rights protected by YETI's intellectual property.  On information and belief, Mammoth Coolers is also making such infringing products and/or importing such infringing products into the United States.  Mammoth Coolers' infringing products are in the same sizes as YETI's own products, and they are confusingly similar imitations of YETI's own products.  Mammoth Coolers' actions have all been without the authorization of YETI.

24.     Mammoth Coolers' infringing cooler products include at least those in its "Discovery" and "Titan" series.  A screen shot from Mammoth Coolers' website that shows one of Mammoth Coolers' infringing coolers is set forth below in Illustration 5.  Mammoth Coolers' web site is http://mammothcooler.com/.  A printout of this website is attached as Exhibit A.

**Illustration 5:  Screen Shot from Mammoth Coolers' Website.**



25.     An additional image of one of Mammoth Coolers' infringing coolers is shown below in Illustration 6.

**Illustration 6:  Exemplary Image of an Infringing Cooler Product**



26.     Mammoth Coolers' infringing tumbler products include at least those in its "Rover" series.  A screen shot from Mammoth Coolers' website that shows exemplary infringing "Rover" series tumblers is set forth below in Illustration 7.

**Illustration 7:  Screen Shot from Mammoth Coolers' Website.**



27.    Additional exemplary images of Mammoth Coolers' infringing tumblers are shown below in Illustrations 8 and 9.



**Illustration 8:  Exemplary Image of an Infringing Tumbler Product.**

**Illustration 9:  Exemplary Image of an Infringing Tumbler Product.**

28.    As shown in Illustration 10 below, Mammoth Coolers' website has allowed consumers to purchase infringing tumbler products, including choosing the specific tumbler and the quantity of tumblers.  In the Illustration below, the customer would be ordering one Rover 20 tumbler.

**Illustration 10:  Screen Shot from Mammoth Coolers' Web Site.**



Rover 20 |



## Rover 20

**$19.99**

Great for all drinks, hot or cold.  The double-wall insulated design ensures that your drink stays the same temperature as when it was poured into your Rover.

http://mammothcooler.com/product/rover-20/[11/10/2015 2:39:16 PM]



http://mammothcooler.com/product/rover-20/[11/10/2015 2:39:16 PM]

29.     Additionally, set forth below as Illustration 11 and attached as Exhibit B is a
capture from Premco Associates, Inc.'s website, a supplier/distributor of brand name products
for incentive, rewards, and loyalty programs and corporate gifts, promoting the infringing Rover

30 tumbler product.   This promotional material states that the infringing Rover 30 tumbler product will be "available in December" of 2015.

| Illustration 11:  Screen Shot from Premco Associates' Website. |
| --- |



30.     Additionally, set forth below as Illustration 12 and attached as Exhibit C is a capture from The Outdoor Wire's website, a newsletter in the outdoor industry, showing a press release that states that the infringing Rover 30 tumbler product "will be available in stores by December of 2015, which makes it a perfect holiday gift for anybody" and that the infringing Rover 20 tumbler product "will be available by February of 2016."



**Illustration 12:  Screen Shot from The Outdoor Wire's Website.**

Thursday, November 12, 2015

**Rover Series Tumblers from Mammoth**

Cincinnati, Ohio —The new Rover Series tumblers from Mammoth Coolers are the ultimate drinking experience. These kitchen-grade 18/8 stainless steel constructed tumblers are double-walled and vacuum-sealed for superior temperature regulation. The shatterproof stainless steel construction will never rust and is BPA free. The Rover Series has been tested head-to-head with the top competitors and proved to be superior in every category. They will keep ice longer or liquids hotter longer.

Not only do Rover Series tumblers dominate the competition when it comes to performance, they also cost 25-35% less than their competitors. Mike Hannigan, CEO of Mammoth Coolers, couldn't have been more pleased with the results, "When I found out that the Rover had outperformed the competition in every category in the head-to-head test, I couldn't have been happier. It's great for the consumer to be able to choose a superior product at such a value," Hannigan said.

The Rover 20oz costs just $19.99 MSRP and the Rover 30oz $29.99 MSRP and they both come with a 5-year warranty. The Rover 30oz will be available in stores by December, which makes it a perfect holiday gift for anybody. The 20oz Rover will be available by February of 2016.

About Mammoth Coolers
Mammoth Coolers is committed to developing coolers of superior design, performance and value. We pride ourselves on developing an ongoing, lifelong relationship with you, our valued consumer.

For more information visit, www.mammothcooler.com

31.     YETI used its trade dress extensively and continuously before Mammoth Coolers began advertising, promoting, selling, offering to sell, or distributing its infringing products. Moreover, YETI's trade dress became famous and acquired secondary meaning in the United States and in the State of Texas before Mammoth Coolers commenced its unlawful use of YETI's trade dress.

32.     As a result of Mammoth Coolers' activities related to the infringing products, there is a strong likelihood of confusion between Mammoth and its products on the one hand, and YETI and its products on the other hand.

33.     As discussed in more detail below, Mammoth Coolers' actions are unfair and unlawful.

**Count I:**
**Trade Dress Infringement Under § 43(a) of the Lanham Act, 15 U.S.C. § 1125(a)**

34.     YETI realleges and incorporates the allegations set forth in paragraphs 1 through 33 as though fully set forth herein.

35.     Mammoth Coolers' advertisements, promotions, offers to sell, sales, and/or distribution of the infringing products violates § 43(a) of the Lanham Act, 15 U.S.C. § 1125(a) by infringing YETI's trade dress.  Mammoth Coolers' use of YETI's trade dress and/or colorable imitations thereof is likely to cause confusion, mistake or deception as to the affiliation, connection, and/or association of Mammoth Coolers with YETI and as to the origin, sponsorship, and/or approval of the infringing products, at least by creating the false and misleading impression that the infringing products are manufactured by, authorized by, or otherwise associated with YETI.

36.     YETI's trade dress is entitled to protection under the Lanham Act.  YETI's trade dress includes unique, distinctive, and non-functional designs.   YETI has extensively and continuously promoted and used its trade dress in the United States.  Through that extensive and continuous use, YETI's trade dress has become a well-known indicator of the origin and quality of YETI's cooler and insulated drinkware products.   YETI's trade dress has also acquired substantial secondary meaning in the marketplace.  Moreover, YETI's trade dress acquired this secondary meaning before Mammoth Coolers commenced its unlawful use of YETI's trade dress and colorable imitations thereof in connection with the infringing products.

37.     Mammoth Coolers' use of YETI's trade dress and colorable imitations thereof has caused and, unless enjoined, will continue to cause substantial and irreparable injury to YETI for

which YETI has no adequate remedy at law, including at least substantial and irreparable injury to the goodwill and reputation for quality associated with YETI's trade dress and its cooler and tumbler products.

38.     On information and belief, Mammoth Coolers' use of YETI's trade dress and colorable imitations thereof has been intentional, willful, and malicious.  Mammoth Coolers' bad faith is evidenced at least by the similarity of the infringing products to YETI's trade dress, as demonstrated, for example, in Illustrations 6, 8, and 9 above, and by Mammoth Coolers' continuing disregard for YETI's rights.

39.     YETI is entitled to injunctive relief, and YETI is entitled to recover at least Mammoth Coolers' profits, YETI's actual damages, enhanced damages, costs, and reasonable attorney fees under at least 15 U.S.C. §§ 1125(a), 1116, and 1117.

**Count II:**
**Unfair Competition and False Designation of Origin Under § 43(a)**
**of the Lanham Act, 15 U.S.C. § 1125(a)**

40.     YETI realleges and incorporates the allegations set forth in paragraphs 1 through 39 as though fully set forth herein.

41.     Mammoth Coolers' advertisements, promotions, offers to sell, sales, and/or distribution of the infringing products, in direct competition with YETI, violates § 43(a) of the Lanham Act, 15 U.S.C. § 1125(a) and constitutes unfair competition and false designation of origin, at least because Mammoth Coolers has obtained an unfair advantage as compared to YETI through its use of YETI's trade dress and/or colorable imitations thereof and because such use is likely to cause consumer confusion as to the origin and/or sponsorship/affiliation of the infringing products, at least by creating the false and misleading impression that the infringing products are manufactured by, authorized by, or otherwise associated with YETI.

42.     YETI's trade dress is entitled to protection under the Lanham Act.  YETI's trade dress includes unique, distinctive, and non-functional designs.  YETI has extensively and continuously promoted and used its trade dress in the United States.  Through that extensive and

continuous use, YETI's trade dress has become a well-known indicator of the origin and quality of YETI's cooler and insulated drinkware products. YETI's trade dress has also acquired substantial secondary meaning in the marketplace. Moreover, YETI's trade dress acquired this secondary meaning before Mammoth Coolers commenced its unlawful use of YETI's trade dress and colorable imitations thereof in connection with the infringing products.

43.    Mammoth Coolers' use of YETI's trade dress and colorable imitations thereof has caused and, unless enjoined, will continue to cause substantial and irreparable injury to YETI for which YETI has no adequate remedy at law, including at least substantial and irreparable injury to the goodwill and reputation for quality associated with YETI's trade dress and its cooler and tumbler products.

44.    On information and belief, Mammoth Coolers' use of YETI's trade dress and colorable imitations thereof has been intentional, willful, and malicious. Mammoth Coolers' bad faith is evidenced at least by the similarity of the infringing products to YETI's trade dress, as demonstrated in, for example, Illustrations 6, 8, and 9 above, and by Mammoth Coolers' continuing disregard for YETI's rights.

45.    YETI is entitled to injunctive relief, and YETI is also entitled to recover at least Mammoth Coolers' profits, YETI's actual damages, enhanced damages, costs, and reasonable attorney fees under at least 15 U.S.C. §§ 1125(a), 1116, and 1117.

**Count III:**
**Trade Dress Dilution Under § 43(c) of the Lanham Act, 15 U.S.C. § 1125(c)**

46.    YETI realleges and incorporates the allegations set forth in paragraphs 1 through 45 as though fully set forth herein.

47.    Mammoth Coolers' advertisements, promotions, offers to sell, sales, and/or distribution of the infringing products violates § 43(c) of the Lanham Act, 15 U.S.C. § 1125(c).

48.    YETI's trade dress is entitled to protection under the Lanham Act. YETI's trade dress includes unique, distinctive, and non-functional designs. YETI's trade dress has acquired distinctiveness through YETI's extensive and continuous promotion and use of YETI's trade

22

dress in the United States.  Through that extensive and continuous use, YETI's trade dress has become a famous well-known indicator of the origin and quality of YETI's cooler and insulated drinkware products throughout the United States, and is widely recognized by the general consuming public as a designation of the source of YETI's cooler and insulated drinkware products.  YETI's trade dress has also acquired substantial secondary meaning in the marketplace.  Moreover, YETI's trade dress became famous and acquired this secondary meaning before Mammoth Coolers commenced its unlawful use of YETI's trade dress and colorable imitations thereof in connection with the infringing products.

49.    Mammoth Coolers' use of YETI's trade dress and colorable imitations thereof is likely to cause, and has caused, dilution of YETI's famous trade dress, at least by eroding the public's exclusive identification of YETI's famous trade dress with YETI, by lessening the capacity of YETI's famous trade dress to identify and distinguish YETI's cooler and insulated drinkware products, by associating YETI's trade dress with products of inferior quality, and by impairing the distinctiveness of YETI's famous trade dress.

50.    Mammoth Coolers' use of YETI's trade dress and colorable imitations thereof has caused, and, unless enjoined, will continue to cause, substantial and irreparable injury to YETI for which YETI has no adequate remedy at law, including at least substantial and irreparable injury to the goodwill and reputation for quality associated with YETI's trade dress and its cooler and tumbler products.

51.    On information and belief, Mammoth Coolers' use of YETI's trade dress and colorable imitations thereof has been intentional, willful, and malicious.  Mammoth Coolers' bad faith is evidenced at least by the similarity of the infringing products to YETI's trade dress, as demonstrated in, for example, Illustrations 6, 8, and 9 above, and by Mammoth Coolers' continuing disregard for YETI's rights.

52.    YETI is entitled to injunctive relief, and YETI is also entitled to recover at least Mammoth Coolers' profits, actual damages, enhanced profits and damages, costs, and reasonable attorney fees under at least 15 U.S.C. §§ 1125(c), 1116, and 1117.

**Count IV:**
**Trade Dress Dilution Under Tex. Bus. & Com. Code § 16.103**

53.     YETI realleges and incorporates the allegations set forth in paragraphs 1 through 52 as though fully set forth herein.

54.     Mammoth Coolers' advertisements, promotions, offers to sell, sales, and/or distribution of the infringing products violate § 16.103 of the Texas Business & Commerce Code.

55.     YETI's trade dress is entitled to protection under Texas law.  YETI's trade dress includes unique, distinctive, and non-functional designs.  YETI has extensively and continuously promoted and used its trade dress in the United States and in the State of Texas.  Through that extensive and continuous use, YETI's trade dress has become a famous and well-known indicator of the origin and quality of YETI's cooler and insulated drinkware products in the United States and in the State of Texas, and YETI's trade dress is widely recognized by the public throughout Texas as a designation of the source of YETI's cooler and insulated drinkware products.  YETI's trade dress also acquired substantial secondary meaning in the marketplace, including in the State of Texas.  Moreover, YETI's trade dress became famous and acquired this secondary meaning before Mammoth Coolers commenced its unlawful use of YETI's trade dress and colorable imitations thereof in connection with the infringing products.

56.     Mammoth Coolers' use of YETI's trade dress and colorable imitations thereof is likely to cause, and has caused, dilution of YETI's famous trade dress at least by eroding the public's exclusive identification of YETI's famous trade dress with YETI, by lessening the capacity of YETI's famous trade dress to identify and distinguish YETI's cooler and insulated drinkware products, by associating YETI's trade dress with products of inferior quality, and by impairing the distinctiveness of YETI's famous trade dress.

57.     Mammoth Coolers' use of YETI's trade dress and colorable imitations thereof has caused, and, unless enjoined, will continue to cause, substantial and irreparable injury to YETI for which YETI has no adequate remedy at law, including at least substantial and irreparable

injury to the goodwill and reputation for quality associated with YETI's trade dress and its cooler and tumbler products.

58.     On information and belief, Mammoth Coolers' use of YETI's trade dress and colorable imitations thereof has been intentional, willful, and malicious.  Mammoth Coolers' bad faith is evidenced at least by the similarity of the infringing products to YETI's trade dress, as demonstrated in, for example, Illustrations 6, 8, and 9 above, and by Mammoth Coolers' continuing disregard for YETI's rights.

59.     YETI is entitled to injunctive relief, and YETI is also entitled to recover at least Mammoth Coolers' profits, actual damages, enhanced profits and damages, and reasonable attorney fees under at least Tex. Bus. & Com. Code § 16.104.

### Count V:
### Common Law Trade Dress Infringement

60.     YETI realleges and incorporates the allegations set forth in paragraphs 1 through 59 as though fully set forth herein.

61.     Mammoth Coolers' advertisements, promotions, offers to sell, sales, and/or distribution of the infringing products, in direct competition with YETI, constitute common law trade dress infringement, at least because Mammoth Coolers' use of YETI's trade dress and/or colorable imitations thereof is likely to cause consumer confusion as to the origin and/or sponsorship/affiliation of the infringing products, at least by creating the false and misleading impression that the infringing products are manufactured by, authorized by, or otherwise associated with YETI.

62.     YETI's trade dress is entitled to protection under the common law.  YETI's trade dress includes unique, distinctive, and non-functional designs.  YETI has extensively and continuously promoted and used its trade dress in the United States and the State of Texas.  Through that extensive and continuous use, YETI's trade dress has become a well-known indicator of the origin and quality of YETI's cooler and insulated drinkware products.  YETI's trade dress has also acquired substantial secondary meaning in the marketplace.  Moreover,

YETI's trade dress acquired this secondary meaning before Mammoth Coolers commenced its unlawful use of YETI's trade dress and colorable imitations thereof in connection with the infringing products.

63.     Mammoth Coolers' use of YETI's trade dress and colorable imitations thereof has caused and, unless enjoined, will continue to cause substantial and irreparable injury to YETI for which YETI has no adequate remedy at law, including at least substantial and irreparable injury to the goodwill and reputation for quality associated with YETI's trade dress and its cooler and tumbler products.

64.     On information and belief, Mammoth Coolers' use of YETI's trade dress and colorable imitations thereof has been intentional, willful, and malicious.  Mammoth Coolers' bad faith is evidenced at least by the similarity of the infringing products to YETI's trade dress, as demonstrated in, for example, Illustrations 6, 8, and 9 above, and by Mammoth Coolers' continuing disregard for YETI's rights.

65.     YETI is entitled to injunctive relief, and YETI is also entitled to recover at least YETI's damages, Mammoth Coolers' profits, punitive damages, costs, and reasonable attorney fees.

**Count VI:**
**Common Law Unfair Competition**

66.     YETI realleges and incorporates the allegations set forth in paragraphs 1 through 65 as though fully set forth herein.

67.     Mammoth Coolers' advertisements, promotions, offers to sell, sales, and/or distribution of the infringing products, in direct competition with YETI, constitute common law unfair competition, at least by palming off/passing off of Mammoth Coolers' goods and/or by simulating YETI's trade dress in an intentional and calculated manner that is likely to cause consumer confusion as to origin and/or sponsorship/affiliation of the infringing products, at least by creating the false and misleading impression that the infringing products are manufactured by,

authorized by, or otherwise associated with YETI.  Mammoth Coolers has also interfered with YETI's business.

68.     YETI's trade dress is entitled to protection under the common law.  YETI's trade dress includes unique, distinctive, and non-functional designs.  YETI has extensively and continuously promoted and used YETI's trade dress for years in the United States and the State of Texas.  Through that extensive and continuous use, YETI's trade dress has become a well-known indicator of the origin and quality of YETI's cooler and insulated drinkware products. YETI's trade dress has also acquired substantial secondary meaning in the marketplace. Moreover, YETI's trade dress acquired this secondary meaning before Mammoth Coolers commenced its unlawful use of YETI's trade dress and colorable imitations thereof in connection with the infringing products.

69.     Mammoth Coolers' use of YETI's trade dress and colorable imitations thereof has caused and, unless enjoined, will continue to cause substantial and irreparable injury to YETI for which YETI has no adequate remedy at law, including at least substantial and irreparable injury to the goodwill and reputation for quality associated with YETI's trade dress and its cooler and tumbler products.

70.     On information and belief, Mammoth Coolers' use of YETI's trade dress and colorable imitations thereof has been intentional, willful, and malicious.  Mammoth Coolers' bad faith is evidenced at least by the similarity of the infringing products to YETI's trade dress, as demonstrated in, for example, Illustrations 6, 8, and 9 above, and by Mammoth Coolers' continuing disregard for YETI's rights.

71.     YETI is entitled to injunctive relief, and YETI is also entitled to recover at least YETI's damages, Mammoth Coolers' profits, punitive damages, costs, and reasonable attorney fees.

**Count VII:**
**Common Law Misappropriation**

72.     YETI realleges and incorporates the allegations set forth in paragraphs 1 through 71 as though fully set forth herein.

73.     Mammoth Coolers' advertisements, promotions, offers to sell, sales, and/or distribution of the infringing products, in direct competition with YETI, constitute common law misappropriation.

74.     YETI created the products covered by YETI's trade dress through extensive time, labor, effort, skill, and money.  Mammoth Coolers has wrongfully used YETI's trade dress and/or colorable imitations thereof in competition with YETI and gained a special advantage because Mammoth Coolers was not burdened with the expenses incurred by YETI.  Mammoth Coolers has commercially damaged YETI, at least by causing consumer confusion as to origin and/or sponsorship/affiliation of the infringing products, by creating the false and misleading impression that the infringing products are manufactured by, authorized by, or otherwise associated with YETI, and by taking away sales that YETI would have made.

75.     YETI's trade dress is entitled to protection under the common law.  YETI's trade dress includes unique, distinctive, and non-functional designs.  YETI has extensively and continuously promoted and used YETI's trade dress for years in the United States and the State of Texas.  Through that extensive and continuous use, YETI's trade dress has become a well-known indicator of the origin and quality of YETI's cooler and insulated drinkware products. YETI's trade dress has also acquired substantial secondary meaning in the marketplace. Moreover, YETI's trade dress acquired this secondary meaning before Mammoth Coolers commenced its unlawful use of YETI's trade dress and colorable imitations thereof in connection with the infringing products.

76.     Mammoth Coolers' use of YETI's trade dress and colorable imitations thereof has caused and, unless enjoined, will continue to cause substantial and irreparable commercial injury to YETI for which YETI has no adequate remedy at law, including at least substantial and

28

irreparable injury to the goodwill and reputation for quality associated with YETI's trade dress and its cooler and tumbler products. Moreover, as a result of its misappropriation, Mammoth Coolers has profited and, unless such conduct is enjoined by this Court, will continue to profit by misappropriating the time, effort, and money that YETI invested in establishing the reputation and goodwill of YETI's trade dress and its cooler and tumbler products.

77. Mammoth Coolers' misappropriation of YETI's trade dress has been intentional, willful, and malicious. Mammoth Coolers' bad faith is evidenced at least by the similarity of the infringing products to YETI's trade dress, as demonstrated in, for example, Illustrations 6, 8, and 9 above, and by Mammoth Coolers' continuing disregard for YETI's rights.

78. YETI is entitled to injunctive relief, and YETI is also entitled to recover at least YETI's damages, Mammoth Coolers' profits, punitive damages, costs, and reasonable attorney fees.

**Count VIII:**
**Unjust Enrichment**

79. YETI realleges and incorporates the allegations set forth in paragraphs 1 through 78 as though fully set forth herein.

80. Mammoth Coolers' advertisements, promotions, offers to sell, sales, and/or distribution of the infringing products, in direct competition with YETI, constitute unjust enrichment, at least because Mammoth Coolers has wrongfully obtained benefits at YETI's expense. Mammoth Coolers has also, *inter alia*, operated with an undue advantage.

81. YETI created the products covered by YETI's trade dress through extensive time, labor, effort, skill, and money. Mammoth Coolers has wrongfully used and is wrongfully using YETI's trade dress and/or colorable imitations thereof in competition with YETI, and has gained and is gaining a wrongful benefit by undue advantage. Mammoth Coolers has not been burdened with the expenses incurred by YETI, yet Mammoth Coolers is obtaining the resulting benefits for its own business and products.

82.     YETI's trade dress is entitled to protection under the common law.  YETI's trade dress includes unique, distinctive, and non-functional designs.   YETI has extensively and continuously promoted and used YETI's trade dress for years in the United States and the State of Texas.  Through that extensive and continuous use, YETI's trade dress has become a well-known indicator of the origin and quality of YETI's cooler and insulated drinkware products. YETI's trade dress has also acquired substantial secondary meaning in the marketplace. Moreover, YETI's trade dress acquired this secondary meaning before Mammoth Coolers commenced its unlawful use of YETI's trade dress and colorable imitations thereof in connection with the infringing products.

83.     Mammoth Coolers' use of YETI's trade dress and colorable imitations thereof has caused and, unless enjoined, will continue to cause substantial and irreparable commercial injury to YETI for which YETI has no adequate remedy at law, including at least substantial and irreparable injury to the goodwill and reputation for quality associated with YETI's trade dress and its cooler and tumbler products.  YETI accumulated this goodwill and reputation through extensive time, labor, effort, skill, and investment.  Mammoth Coolers has wrongfully obtained and is wrongfully obtaining a benefit at YETI's expense by taking undue advantage and free-riding on YETI's efforts and investments, and enjoying the benefits of YETI's hard-earned goodwill and reputation.

84.     Mammoth Coolers' unjust enrichment at YETI's expense has been intentional, willful, and malicious.  Mammoth Coolers' bad faith is evidenced at least by the similarity of the infringing products to YETI's trade dress, as demonstrated in, for example, Illustrations 6, 8, and 9 above, and by Mammoth Coolers' continuing disregard for YETI's rights.

85.     YETI is entitled to injunctive relief, and YETI is also entitled to recover at least Mammoth Coolers' profits.

### **Demand for Jury Trial**

86.     YETI hereby demands a jury trial on all issues so triable.

**Relief Sought**

WHEREFORE, Plaintiff respectfully prays for:

1.     Judgment that Mammoth Coolers has (i) infringed YETI's trade dress in violation of § 1125(a) of Title 15 in the United States Code; (ii) engaged in unfair competition and false designation of origin in violation of § 1125(a) of Title 15 in the United States Code; (iii) diluted YETI's trade dress in violation of § 1125(c) of Title 15 in the United States Code; (iv) diluted YETI's trade dress in violation of Tex. Bus. & Com. Code § 16.103; (v) violated YETI's common law rights in YETI's trade dress; (vi) engaged in common law unfair competition; (vii) engaged in common law misappropriation; and (viii) been unjustly enriched at YETI's expense, and that all of these wrongful activities by Mammoth Coolers were willful;

2.     An injunction against further infringement and dilution of YETI's trade dress, further acts of unfair competition, misappropriation, and unjust enrichment by Mammoth Coolers, and each of its agents, employees, servants, attorneys, successors and assigns, and all others in privity or acting in concert with any of them, including at least from selling, offering to sell, distributing, importing, or advertising the infringing products, or any other products that use a copy, reproduction, or colorable imitation of YETI's trade dress, pursuant to at least 15 U.S.C. § 1116 and Tex. Bus. & Com. Code § 16.104;

3.     An Order directing Mammoth Coolers to recall all infringing products sold and/or distributed and provide a full refund for all recalled infringing products;

4.     An Order directing the destruction of (i) all infringing products, including all recalled infringing products, (ii) any other products that use a copy, reproduction, or colorable imitation of YETI's trade dress in Mammoth Coolers' possession or control, (iii) all plates, molds, and other means of making the infringing products in Mammoth Coolers' possession, custody, or control, and (iv) all advertising materials related to the infringing products in Mammoth Coolers' possession, custody, or control, including on the Internet, pursuant to at least 15 U.S.C. § 1118;

5.     An Order directing Mammoth Coolers to publish a public notice providing proper attribution of YETI's trade dress to YETI, and to provide a copy of this notice to all customers, distributors, and/or others from whom the infringing products are recalled;

6.     An Order barring importation of the infringing products and/or colorable imitations thereof into the United States, and barring entry of the infringing products and/or colorable imitations thereof into any customhouse of the United States, pursuant to at least 15 U.S.C. § 1125(b);

7.     An award of Mammoth Coolers' profits, YETI's actual damages, enhanced damages, exemplary damages, costs, prejudgment and post judgment interest, and reasonable attorney fees pursuant to at least 15 U.S.C. §§ 1125(a), 11125(c), 1116, and 1117 and Tex. Bus. & Com. Code § 16.104; and

9.     Such other and further relief as this Court deems just and proper.


Dated:  December 7, 2015                    Respectfully submitted,



                                        By: _/s/ Joseph Gray_____
                                        Joseph Gray
                                        Texas Bar No. 24045970
                                        joseph.gray@bakerbotts.com
                                        Kevin Meek
                                        State Bar No. 13899600
                                        kevin.meek@bakerbotts.com
                                        Baker Botts L.L.P.
                                        98 San Jacinto Blvd., Suite 1500
                                        Austin, Texas 78701
                                        Telephone: (512) 322-2639
                                        Facsimile: (512) 322-8385

                                        Joseph J. Berghammer (*pro hac vice forthcoming*)
                                        Illinois Bar No. 6273690
                                        jberghammer@bannerwitcoff.com
                                        Michael L. Krashin (*pro hac vice forthcoming*)
                                        Illinois Bar No. 6286637
                                        mkrashin@bannerwitcoff.com

Sean J. Jungels (*pro hac vice forthcoming*)
Illinois Bar No. 6303636
sjungels@bannerwitcoff.com
Banner & Witcoff, Ltd.
Ten South Wacker Drive
Suite 3000
Chicago, IL 60606-7407
Telephone: (312) 463-5000
Facsimile: (312) 463-5001

**ATTORNEYS FOR YETI COOLERS, LLC**